**STUEVE et, Plaintiffs, v. CINCINNATI, (City) et, Defendants.**

Common Pleas Court, Hamilton County.

No. A-136996. Decided May 25, 1959.

Thomas Stueve & John L. Sanger, for plaintiffs.
Isabel Guy, Asst. Solicitor, for defendants.

**OPINION**

By RENNER, J.:

This action was instituted by Lela R. Stueve and others against the City of Cincinnati, the County Auditor and the Treasurer of Hamilton County, Ohio. The petition alleges that Lela R. Stueve and the other plaintiffs are the owners of their respective properties in which they reside on Victoria Lane and Portsmouth Avenue in Cincinnati, Ohic As such owners they seek to enjoin the City of Cincinnati from enforc-

ing resolution No. 53-12, adopted by the Council of Cincinnati, requiring them to construct or repair with concrete the driveway entrances to their respective properties. The driveway areas in question, which are known as the park-strip areas, lie between the paved portion of the street maintained by the City as a roadway, and the property line of the plaintiffs which adjoined the dedicated or platted portion of the street.

The petition further alleges that all of the park-strip areas were originally, have been for many years and are now constructed of black-top and were at all the times in question in good, safe and serviceable condition.

The answer of the City admits the general allegations of the petition but denies that the action of council, in adopting and attempting to enforce the resolution complained of, is unreasonable, unlawful or arbitrary and that plaintiffs will suffer damage as alleged in the petition.

A second defense in the answer, states that the driveway entrances are maintained in the public right-of-way under the care, control and regulation of the City Council and that such driveway areas were constructed without a permit from the City and contrary to the rules and regulations governing their construction.

At the close of plaintiffs' case in chief, the City of Cincinnati moved the Court to dismiss the petition and to render judgment for the City of Cincinnati; counsel for the City then rested their case, without offering any testimony. After oral argument on the motion, counsel for plaintiffs and the City asked leave to submit memorandum briefs in support of their respective positions and the matter for determination here is the City's motion to dismiss and for judgment.

In their oral argument and in their brief, counsel for the City concede that for the purposes of the motion all of the facts alleged by the plaintiffs in their petition including those which are denied by the City of Cincinnati must be assumed to be true. They further contend that even if the disputed facts were proved by the plaintiffs such facts are insufficient to support a cause of action for the reason that such disputed facts are immaterial to the issues involved.

The City's position is that the merits of black-top vs concrete or cement paving is not involved. They contend that the only material issue is one of law and not of fact, namely, whether the property owners or the City have the right to determine what material and type of construction are to be used in the park-strip areas for the enjoyment and benefit of the abutting owners in the public right-of-way.

If the City's contention that it has the sole right to determine the materials to be used is correct that authority must stem from two sources:

(A) The special power and authority granted to municipalities under §723.01 R. C., to regulate the use of the streets and to care for, supervise and control them.

(B) The responsibility and duty which is imposed upon municipalities to guard and protect the public health, welfare, morals and safety.

The Courts of Ohio have always recognized the powers, duties and

responsibilities of municipalities under §723.01 R. C., but they have not hesitated to curb the abuse of such power when exercised arbitrarily or unreasonably without regard to the public necessity or so as to interfere with private rights beyond the necessities of the situation. 99 Oh St 376; Froelich v. City of Cleveland; 6 Oh Ap (Hamilton County), 420 Thompson v. City of Cincinnati; 28 O. Jur., page 609, Sec. 385, and Johnson v. City of Cincinnati, A-159552 of this Court.

In the last mentioned case the plaintiffs were also owners-residents of Portsmouth Avenue and Victoria Lane in the immediate vicinity of the plaintiffs here. The Court enjoined the City from enforcing the provisions of the ordinance requiring replacement of the existing blacktop in the park-strip areas involved so long as they were kept in good condition.

Counsel for the defendants rely principally on Shafer v. Ohio Turnpike Commission, 159 Oh St 581, 50 O. O. 465, as authority for the City's right to require the replacement of black-top with concrete. The relator in that case by mandamus sought to compel the Ohio Turnpike Commission to revise its plans and specifications for certain Turnpike construction, which provided for the use of Portland cement only, so as to include bids on alternative materials. The Supreme Court in its opinion at page 586 (Oh St), stated that "Portland cement" referred to the method of manufacture and not to the product of any particular plant or company and that the plans and specifications of the commission did not limit competition as claimed.

The Court in that case was deciding the powers and duties of the Turnpike Commission under the particular facts in that case and the provisions of the Turnpike Act which govern the acts of that commission. The Court found that the Turnpike Act vested broad discretionary power in the Commission and denied the relators petitions. The Court at p. 587 (Oh St) made this observation:

"The only restraint upon the exercise of discretion by the commission is that which the law imposes upon all administrative bodies, viz:, that it act in good faith and not in abuse of its discretion." (Emphasis added.)

It is obvious that the pronouncements of the Court in the Turnpike case can have no application to the entirely different facts and laws which apply to them here.

The Standard Fire Ins. Co. v. City of Fremont, 164 Oh St 344, 58 O. O. 130, cited by counsel for plaintiff is a case in point. In that case the Insurance Co. sought to recover by subrogation the money paid by it to its insured for damage to the insured's house. The loss was caused by a tree which fell upon and damaged the insured home. The tree stood in front of the insured's premises between the sidewalk and the street proper. Several months before it fell the roots were cut by an independent contractor who was widening the street for the City. In relieving the City from liability the Court held that the provisions of §723.01 R. C., are in derogation of the common law and are subject to strict construction; and the scope and application of such statutory provisions as to such streets are limited to conditions affecting the actual

## 14

physical structure of the streets and to the physical obstructions or hindrances to travel thereon.

Under the law plaintiffs are required to pay the costs of construction and maintenance of the park-strip areas and such areas are intended only for egress and ingress to the plaintiffs properties and not for public street purposes; they are not a part of the actual physical structure of the streets and they do not constitute an obstruction or hindrance to travel on such streets. Furthermore the undisputed testimony was that all of the park-strips have been and are maintained in good and safe condition and that black-top is as durable and safe as concrete. Under the conditions and circumstances, the city lacked the power or authority under §723.01 R. C., to compel the plaintiffs to comply with council's resolution No. 53-12; nor could the city justify its action to compel the substitution of concrete for black-top under its broad police powers when the city has and continues to construct many of its streets and highways with black-top materials.

Furthermore, I find no merit to defendants' contention that because such driveway entrances were constructed many years ago without permits from the City and contrary to its rules and regulations governing construction of driveway entrances that they should be torn up and replaced with concrete.

In conclusion I find that the attempt by the City of Cincinnati, by Council Resolution No. 53-12 or otherwise, to force the plaintiffs to replace their present black-top park-strips areas with concrete constituted an unreasonable, arbitrary and imperious exercise of power: and the City of Cincinnati should, therefore, be enjoined from enforcing the provisions of Council Resolution No. 53-12 requiring such replacement, as long as such park-strip areas are kept in good and safe condition.

Please present a decree accordingly.